I'll call her last case 22-4012 Smith v. Becerra. Mr. Pistorino. Thank you, Your Honor. James Pistorino on behalf of Mrs. Smith. Nearly five years after submitting, after presenting her claim for Medicare coverage, Ms. Smith finally reached the District Court, the first tribunal in the appeal process with the power to review and invalidate 1682-R. The District Court erred as a matter of law when it allowed the Secretary to avoid any judicial review when it concluded that the Secretary's agreement to pay her claims afforded Ms. Smith complete relief and left the Court with no power to address the rest of Ms. Smith's causes of action, including her request for injunctive relief against 1682-R. The District Court's two-sentence docket entry entering judgment remanding solely for payment of Ms. Smith's findings or even consider the non-monetary relief sought ignores that Ms. Smith's other causes of action were not alternative theories for monetary recovery. Instead, they sought separate non-monetary relief, including an injunction. Do you interpret the May 13th revised ruling as basically granting you a successful outcome on all your other pending claims? When you say the May 13th revised ruling, you mean, are you referring to the document that was submitted on Friday at 415? Yes. So the first answer is no. Sex off all common things? No. I mean, obviously, again, Ms. Smith sought. You don't interpret that as giving you a win across the board? No. On pending claims? Why not? No. Well, again, first off, again, there's no injunction against the enforcement of 1682. Number one, there's no determination that the Secretary's process of issuing rulings without complying with notice and comment is in violation of the law. Throughout this entire case and throughout the entire really five-year period this matter has been litigated, the Secretary contends that they have the power to issue rulings in violation of 1395H, the notice and comment provision specific to the Medicare Act. And as the Secretary said below here and somewhat in the papers to this Court, the Secretary contends the District Courts have no power to stop the agency from enacting illegally in that way. So you're not going to declare victory? No. No, no. I wish I could. Obviously, we need to determine whether this is still justiciable under the mootness doctrine. So I want your kind of best response that it's not moot. Right. So again, obviously, we got the same papers you guys got on Friday afternoon. If I thought it was quite interesting and essentially if you were to read that document, sort of across the board they admitted what I've been saying the entire time, that CGMs are in fact blood glucose monitors as that term is used in the statute. Congratulations. Thank you. So across the board admitting, for example, that the technical direction letter you saw mentioned here, that that also did not stop the conduct. Again, we saw Judge Mendoza in the Olson case out of Spokane say again that didn't stop it. So through Friday, I'll say in our view, the submission they made admitted that everything they said before was wrong and everything we said was right. And so the case as it stood before the District Court certainly was not moot and still had the power. Now coming to the effect potentially of Friday's Friday's letter. So generally we would just respond of sort of three main points. First, I know we turned in a letter, I apologize for it, late Sunday night citing the WT Grant case from the Supreme Court going down the voluntary cessation points and of course pointing out that this mere ceasing of the illegal conduct does not deprive the court of jurisdiction to issue an injunction. So number one, because of course if they just stopped it, it would allow them to continue the illegal conduct on a going forward basis just as soon as this case was resolved. Next, Whedon. So I think another important aspect that we could get into of as we've been saying all along, basically in our view, you just have bad faith conduct from the get-go on the 1682R throughout the whole process. So one aspect here is whether or not at the end of the day, I think as Judge Mendoza said, whether or not they can be trusted with whatever they say now. And I think as Judge Mendoza said, again I know that we cited too, that he had significant concerns that whatever they said could be trusted. And that's one reason there, for example, he said it's not moved based on the TDL. Let's talk about this for just a second. And I don't mean to interrupt, but as far as the claims that you have that are currently ripe for a decision, you win. They agree to that. You're not worried that they're going to go back after they confessed error and it was remanded for you to get your damages, that they're going to on those claims try to jerk the rug out from under you and say, no, we're not going to pay them. We don't, we've changed our mind. We're not confessing error, right? I agree with you in the sense I'm not concerned that Ms. Smith will not be paid for the three claims that are in this case. But I am concerned, number one, that there's been no finding that her CGM is durable medical equipment. Because there's no, sadly, there's no cure for type 1 diabetes that she suffers from, she will have continued claims going forward. Right. And one aspect... So, so let me, let me, let me stop you there. So, and then you have other claims that are pending that have not been ruled on by a district court. Correct. And you also want as part of your relief with respect to your appeal from these three denials, you want relief as to those that you have that are pending. No, that's not correct. Well, that's what your injunction would do, isn't it? If you enjoin them from enforcing it, then it basically gives you a win on your other pending claims before the district court. Because if we're not doing that, I mean, if you win on everything that's properly up here, what do you have? What are we enjoining? You've already won. I just want to make clear, because I know there's many different claims at issue. So we have the three claims at issue in this case. Right. Three claims at issue in this case. Let's focus on those for a moment. Right. And that's my point. You're not, I mean, there's nobody in this room, is there, that thinks that those claims are still in play. You won on those. I think with regard to payment of those three claims, we won. But what we also asked for, again, was the non-monetary relief. Right. And there's different components of that. Okay. But let me ask you, so your non-monetary relief, as it goes to those three claims, I mean, what is it? I mean, what are you getting with respect to those three claims other than payment? You submitted them for payment. They denied it. You appealed. You won. And now, but you also won an injunction. I just don't get, with those three claims, what's left? Right. So you keep on saying we won. And I agree that we won in terms of the payment. But again, I have multiple causes of action with different forms of relief. All the other ones are non-monetary. Okay. So tell me how the rest of them still live after you get paid. Right. So one thing we asked for, for example, just the most simple one, I might say, is a declaration that Ms. Smith's CGM qualifies as durable metal equipment under the statute. Right. A declaration of that will have a real world effect and that in future claims by Ms. Smith, that would be determined and stop the Secretary from contending otherwise. We also asked for a cause of action saying that with regard to 1682, the Secretary did not comply with Congress's statute in 1395HH as signed by the President and subjected to notice and comment. And what we asked for was a determination that that particular conduct, issuing rulings without complying with notice and comment, is violative of the statute and I want an injunction stopping that. And what the Secretary has contended all along is first, we as the Secretary, I have the power to violate the laws of Congress. I can act illegally. That's what they argued below. If you look at the appendix there, motion for summary judgment. Assuming I did violate the statute, court, you have no power to control me. You cannot stop me from acting illegally. So I think that's going to come right back to your question about what was the effect of just comes back. Have they ever disclaimed that position? No. That's the position they maintain. And again, coming back to what their goal, it appears to be, is to avoid judicial review of that solely for the purpose of preserving that claim. So whatever they did on Friday, right, again, I know what point I have here, is that we keep on calling them rulings, right, 1682R, the ruling. It's just a letter written by somebody at the department, right. The January 17th letter, just a letter written by a guy, Patrick McConway, just a letter written by a guy, right, totally illegal. Again, as it's been found, a judge in the Olson case, bad faith, just flat out bad faith. And on basis of that, again, for five years, tens of thousands of claims have been denied, hundreds of thousands actually, and tens of thousands of people have been injured. And so if you just look at the conduct more recently, and can't believe I'm counseling all of these cases, every single case is me, every single step that they have taken has been an effort to avoid judicial review. So when I get a guy, for example, Mr. Olson, and then I win, if they could have, they would have paid all those claims to make sure that he never came back while they continued the bad faith conduct. And that's exactly what Judge Mendoza pointed to. Your theory is that they're going to rescind the rescission. And in other words, they've thrown in the towel through this letter ruling, and that your concern is that they're, as soon as we turn our backs, they're going to rescind that letter ruling and start denying claims again. I mean, that's what, is that the path? So maybe I'll hit it in three ways. First, the whole purpose of these efforts by them is to preserve their ability to do exactly that. So your starting point would be, again, I just maybe more globally, normally you just look at and say, from the voluntary cessation perspective, just a high level. When someone tells me they're not going to do it, what's the reason I'm going to trust them, right? Why would I trust them? I think that was a phrase used, whether or not their change of behavior seems genuine, right? And one of my point is, across the board here, it's not that seems genuine, it's the opposite. You know it was bad faith all the way through. That got you to Friday. Now you go through the voluntary cessation principles under which, of course, the secretary bears, I think the phrases are typically, the formidable burden, the heavy burden, the stringent standard. The secretary would bear the burden of establishing all of that. And again, just coming back to, for example, this court's case in College America, and other cases, two main prongs. First, the voluntary cessation. That doesn't sound like something we can do on appeal. That sounds like it needs to be argued somewhere else, either in the administrative process or maybe back at the district court. At the end of the day, however, it's not my main point. It's just, it would be the secretary's burden to establish it. And again, if you look at. And he hasn't even tried to do it. They haven't even. Right. Right. They haven't tried to. We'll find out in a few minutes, but since Friday, they haven't tried. They haven't tried to. And again, what we would say is, again, from the voluntary cessation, you can trust me kind of things. What you're looking for are indications, bases under which to credit their statement. So normally, it's something formal, like a legislature takes action. And you know that once the legislature takes action, it's going to be really hard to change that. And that's my whole point here. These quote unquote rulings, they're just letters. There's no process. A guy signed a letter in 2017, tens of thousands of people are injured. On Friday, I guess Ms. Brooks decided they didn't want to show up here like that. She just signs a letter. There's no, if this court were to dismiss the case or any court, there's just absolutely no reason. The next day, you sign a letter. And it's not like you say, well, I know that won't happen because they're reasonable. No, you know exactly the opposite. Right. So and the other point, I just had some notes. Let me joust with you for a minute about a couple things. Because what concerns me is there's lots of things up in the air here. And a lot of them seem really speculative to me. A lot of the things you say seem to be like concerning what's going to, might happen to other people. So I want to make sure we're focused on your clients and what you're doing. Because you're not taking the position that you should get an injunction to protect other people, are you? Your position is that you want to go get an injunction so they can't do this to your client going forward. Is that right? I think, actually, the technical answer would be both. Because, again, under this, for example, national mining, I know I cited some cases from this court. When you're litigating, exactly as we are here, the legality of the conduct compliance with the statute, it's not just the statute for, in this case, Ms. Smith. It's for everybody. So our goal, obviously, just from a high level, this case is for about $5,000. No one's going to litigate the case for $5,000 solely. It's very important to Smith. There are much bigger principles that are driving in here. Got it. So I'm just thinking about the district court's remand here. I mean, obviously, I guess this two-line docket entry was followed up with the judgment. No, the two-line was the judgment. It was the judgment. Yes. So the court entered judgment with the two lines. In favor of you. And so, because the government, basically, they came in and confessed error. The court entered, the secretary said, so in so many words, we'll pay your three claims. We'll give you that money, $5,000, as long as the court does not address the legality or any of the other stuff you say, that a settlement offer rejected. The court went with that, said, OK, I'm going to adopt the offer. You say he entered judgment for me. He entered a judgment saying, I want them to pay those three claims and everything else I'm silent on. And I'm sorry, I'm seeing them over my time. Right. We'll continue as long as Judge Carson has to joust. And I won't joust. I won't joust too long. But I'm just, I mean, it concerns me because now what we're talking about is what they might do going forward in the face of, which sounds speculative to me. Without further denials, it concerns me that maybe this isn't right for a decision because the rest of what you want is based on what might happen in the future. Now, I get what you're saying. Look, they're, they've been jerking the rug out from under everybody before. They're going to do it again. I don't want to just be right here again, arguing the same thing to you. And they give us a letter the day before saying they're not going to do it anymore. I get that. But that's sort of what I, I'm just, I'm just struggling with the idea that maybe we're, we're dealing with a case where what you want is an injunction to prevent what might happen in the future, not that, you know, there's any imminent threat that it is going to happen. So if I can, and again, I'm very conscious of my time, but very, very quickly to try to, to try to address it. So first, actually, I was just sitting here thinking at a high level matter, can only, it's so ridiculous. It would be funny, except for the tens of thousands of people that have been injured, right? Except for the deaths. Okay. So number one, I want to come to your point about speculative. I think that's a fair thing. Although again, I know the second prong of voluntary cessation is complete eradication of the effects. And of course, because they've been denying these claims for five years, tens of thousands of people have been dissuaded from even submitting the claims. So again, just from the thing that got submitted on 415 on Friday, how would anybody know, right? I mean, was there some big publicity campaign? Did they send email, send letters to everybody? No. From the public's perspective, it's another secret thing. So they wouldn't know. So no, the second prong they could never show. In terms of speculative, again, their whole thing is, have they stopped? Have they for, forsworn the claim that they can issue rulings without complying with notice and comment 1395-88? No, they have not. They maintain that they still can and that you all are completely powerless, no matter how many people they kill. So is it speculative? Not really when that's the power they claim, right? That's what they're claiming as of today. So, you know, again, you talk about gazemanship. Hey, something came in at 415, you know, two business days before the oral argument in the appeal. And you just see the that came about because I had a motion for preliminary injunction pending in the Olson case, and I'd already, I'd already had it pending. They thought they could knock it off with that. This, because I had already argued against the TDL and it was obviously clearly improper. I appreciate your time. Thank you. Are you done, John? I'm done. Okay. Council, you may be, you seated them. Okay. Let's hear from Mr. Koppel for the Department of Human Services. Good afternoon, your honors. May it please the court. I'm Josh Koppel on behalf of the United States. Plaintiffs sought judicial review of Medicare's denial of three claims for payment. The secretary confessed error and the district court properly entered judgment for plaintiff, ordering the secretary to pay the claims. Okay. So tell me this. What's the effect of that confession? Was it as represented to me by your opposing counsel was it's these three claims, we'll pay them, but we want nothing to do with any other issue that's on the table. The effect of the confession in the district court was that these three claims should have been paid and the secretary will pay them. Now, the secretary went beyond that and explained that the reason those claims should have been covered in the first instance is that plaintiff would obtain supplies for an insulin pump that could also perform the functions of a continuous glucose monitor and insulin pumps have been considered durable medical equipment covered by Medicare since the mid 1990s. The Medicare appeals council, they failed to consider that and they got this wrong. So all of Ms. Smith's future claims related to her insulin pump should be paid. All right. So is it the government's position that they would be, I mean, through some sort of collateral estoppel or issue preclusion from denying this claim going forward in the future as to Smith? I don't know that there would necessarily be collateral estoppel based on that confession of error. That would be, you know, certainly for a future court to decide, but the secretary has in the meantime taken additional action to ensure that these claims of plaintiff and of third parties will not be denied. The secretary in November 2020 issued a proposed rule in December 2021 issued a final rule making clear that adjunctive and therapeutic continuous glucose monitors and insulin pumps that perform the functions of a CGM are durable equipment that are to be covered by Medicare. The secretary, I'm sorry, the CMS then issued that was prospectively. And then CMS took action to apply that rule retroactively as well. First with the technical direction letter, that was the quickest way CMS could address the issue, although it left gaps, for example, Medicare part C. And so then CMS worked toward this ruling that came out last week. And I want to be clear, this is not a letter signed by some guy. This is a administrator of the Centers for Medicare and Medicaid Services. This is a formal statement of coverage. And so last Friday CMS issued this CMS ruling formally rescinding the 2017 CMS ruling and making clear that for pending and future claims, regardless of the date of service, all continuous glucose monitors and insulin pumps that perform the functions of a continuous monitor are durable medical equipment and will be covered by Medicare. That moots this case. Can that be rescinded tomorrow? CMS administrator rulings are not that easily rescinded. I'll say that. In theory, it could be rescinded. But this court, you know, and with regard to voluntary cessation, the exception to mootness, we haven't had a chance to really brief this because the issue just or alteration of administrative policies can moot an attack on those policies, and that the mere possibility that an agency might rescind amendments to its actions does not enliven the moot controversy. And I encourage the court to take a look at Denver Bible Church v. Polis, which was issued this year, Prison Legal News v. Federal Bureau of Prisons in 2019, and Rio Grande Silvery Minnow v. Bureau of Reclamation in 2010. All of those cases involved the rescission or alteration of an administrative policy, and this court held that that rescission or alteration mooted the attack on the policy. The government has accorded a presumption of good faith, and unless there is some evidence that the government is going to rescind the rescission, the court has held that the rescission or alteration moots the claim. There is a history here of steadfast opposition to their statutory theory. So we can't ignore that, can we? Well, I want to answer that in two ways. First, I don't think that there is a history of bad faith. Even after some district courts had ruled that continuous glucose monitors are durable medical equipment, CMS did continue to apply the 2017 CMS ruling, as it was entitled to do, with regard to other Medicare beneficiaries or other claims. Of course, if there had been a court of appeals ruling on that issue, CMS would have had a different policy within that circuit. If there had been a Supreme Court ruling, of course, that would have been definitive. But CMS was entitled to continue to apply that ruling and continue to test the ruling in court. In November 2020, CMS reconsidered the issue, you know, in part due to, of course, these repeated issuing the proposed rule, issuing the final rule, issuing the TDL, issuing this newest CMS ruling. Every action CMS has taken has actually been to move toward covering, for all dates of service, these continuous glucose monitors as durable medical equipment. So there's no indication that CMS is going to pull the rug out. Second, even aside from mootness, so even if the voluntary cessation exception does apply, there's at least a question, at least two questions. First, one of rightness. There's no, you know, we don't know for sure what CMS will do with any particular claim until CMS has actually done that. And so a judicial ruling on a future claim is not yet right. And second, there's a jurisdictional statutory authority issue, which is that a court doesn't have statutory authority, doesn't have jurisdiction to consider a Medicare claim until it has been presented to the agency. There's no claim, other than the three here, that have already been paid. Judgment has been entered, and they've already been paid by CMS. No other claim has yet been presented to the agency and certainly has not yet reached a final agency decision. And so the district court simply doesn't have jurisdiction to consider those future claims. Aren't all those future claims going to be paid under the May 13th ruling? They absolutely should be. And that is just an additional reason that there is no cause for the district court to issue a decision on the validity of the 2017 CMS ruling. That would be an advisory opinion. And, you know, plaintiff shifts tactics here. Instead of simply seeking a decision on the 2017 CMS ruling, which would be an advisory opinion, now plaintiff seeks an advisory opinion on whether CMS rulings generally can be issued without notice and comment. That's certainly an advisory opinion. Are you taking the position that claimants still need to appeal their claims up to the MAC for all these pending cases? If there is a future claim for coverage of a continuous glucose monitor that is denied, that does need to be appealed to the Medicare Appeals Council. After that, CMS issues a final or HHS issues a final agency decision. Only after that does the statute permit the district court to exercise jurisdiction and provide judicial review. I guess my question is different then. Are the administrators, the ALJs, and the MACs still going to be relying on 1682-R? No. Is that gone? That is gone. The 1682-R has been rescinded. So a claim that's pending before the administrator, the ALJ, or the MAC basically should be adjudicated immediately in favor of the claimant? Yes. Are there any exceptions to that? Will this be all glucose monitoring claimants? I might have heard you say that the monitor needed to be connected to another durable medical device. Did I misunderstand that? No, the continuous glucose monitor itself is the Yes, of course, provided that the beneficiary actually has diabetes and is diagnosed and they have to be using a dedicated continuous glucose monitor, not a phone, like an iPhone, because the primary purpose of that is not medical. But the mine run cases, generally speaking, what we're talking about here, continuous glucose monitors starting immediately are considered durable medical equipment. Those claims will be paid. That's regardless of the date of service. And even if a claim has been, has already been denied, if that claim is still pending, you know, it's on appeal to an ALJ, the latest CMS ruling issued by the administrator makes clear that that claim is to be reopened and paid. And I guess this lawyer would know his way around the agency process. But I also have a question on the voluntary succession. I, why doesn't that still need to be resolved somehow, either by this panel or by a district court somewhere? I mean, I don't know that we're in a position to really evaluate that claim yet. Yeah, so because voluntary succession goes to mootness and mootness is a jurisdictional issue, I believe that this court has an independent duty to make a decision on the mootness question itself. You know, some of those cases, that I cited, Denver Bible Church, Prison Legal News, Rio Grande, at least some of those I know, the rescission or alteration of the administrative policy under attack was issued while the case was on appeal. And this court went ahead and made the decision on mootness itself. And, you know, it is true that the court has stated generally the party arguing in favor of mootness bears the burden to show that the challenged action won't be repeated. But the court has also made clear in those cases that where the challenged action was an administrative policy that has been rescinded or altered, the burden is not quite so burdensome. And in fact, the burden may even shift to the plaintiff in those cases to show that there is some cause to think that the government will pull the rug out. And certainly, you know, there's no cause to think that these are formal rulings. And keep in mind that the CMS ruling applies to a closed set of cases because for dates of service February 28, 2022 going forward, those cases, those claims are governed by the 2021 final rule, which went through notice and comment, a very formal rulemaking process. That really cannot easily be reversed absent another notice and comment process. So the CMS ruling applies to a closed set of cases that every day is diminishing. And there is no indication that the CMS administrator for any reason would want to all of a sudden switch policy with regard to that closed and diminishing set of cases. And of course, you know, the CMS administrator cannot, you know, reverse the 2021 final rule, you know, so easily. So the idea that the CMS ruling would be reversed again as soon as this court issues its decision is quite impossible. Let me ask you a question. Are you familiar with the plaintiff's district court actions that are pending? Some of them. Not as familiar with ones. Okay. Do you know, as the government, why hasn't the government confessed error in those cases? When they determined that the three claims in this case should be paid because the interpretation was wrong, why didn't they confess error in those cases too? I'm not, I'm sorry, I can't speak to those. Let me tell you why I'm asking you. Because doesn't the fact that they would confess error here and not confess error in those cases suggest that it was gamesmanship to confess error here and get this case off the books? So, you know, one reason is that the secretary confessed error here immediately because plaintiff was using not just a standalone continuous glucose monitor, but an insulin pump that also insulin pumps have been durable medical equipment again since the mid-1990s. So that's why the secretary was able to confess error here, you know, so quickly. I do expect that with this new CMS ruling, you know, the position may change in those other courts. I'm not sure. I don't understand why that's different from counsel's other case. As I understand it, it's the same plaintiff, same equipment, different payments. These just happen to have had a decision and could come up on appeal. Those are still pending with no ruling. And if they're the same and you confess as to three and you don't confess as to the others, I mean, doesn't that suggest you're trying to evade review? So it's certainly not the same plaintiff, I want to be clear about that. This is Smith's only action. Okay. The other claims are other plaintiffs. Those other cases also involve ancillary issues. So, for example, there's a case in the District of Columbia where plaintiffs were trying to seek payment of claims that had not been appealed and where the time to appeal had run. And so there are questions of whether the district court had jurisdiction over those. I believe that in all sense, some of the issues relate not to whether the claims should have been paid, but what the appropriate relief is, whether injunctive relief should issue attorneys' fees, that kind of thing. So I don't want to speak to those other cases. I'm not familiar enough with them to speak to them. But I'm not sure it's true that the Secretary continues to not pay, you know, continues to take the position that continuous glucose monitors are not durable medical equipment. And certainly this latest CMS ruling, I believe, should make clear that, you know, continuous regardless of the date of service, even for past states of service. Okay. Before you sit down, I had a question on the equitable relief. It seems to me that the cases that I've reviewed strongly suggest that 405G is a permissible vehicle for some forms of equitable and declaratory relief. And I'm not sure you really deny that or oppose that in your papers, but do you agree that a district court could order in an appropriate case some form of equitable relief, an injunction, or a declaratory judgment? Califano v. Yamasaki holds that some form of equitable relief is available. I'm not sure, and we took the position below, we continue to take the position that setting aside or enjoining a rule to apply that would set such that the injunction will require the secretary to pay future claims that haven't been presented. That's a merits question. I'm talking about the broader judicial power question. There is some set of equitable remedies that are available. You know, Califano v. Yamasaki addressed equitable powers to ensure the status quo remains pending resolution of litigation or to protect the interest of absent class members. So certainly those kinds of equitable powers are available. And there was a recent D.C. Circuit case, Parsikansky, that also suggests equitable relief was proper in some circumstances. Exactly. But as that case makes clear, and I think that's a very, quite analogous case, just because Califano held that equitable remedies are available, it doesn't mean, it didn't determine when they're available. And where the plaintiff, and this is what Parsikansky held, where the plaintiff seeks equitable relief to decide future claims that haven't been yet presented to the agency and haven't yet reached a final agency decision, those equitable remedies are not available. But why wouldn't here a declaration that the secretary's interpretation of the statute is wrong, why wouldn't that, that just seems like a pretty garden variety remedy that, you know, actually, to the extent it applies to, you know, thousands of other claimants, would be a good thing because it would resolve the legal authority of the agency. And, you know, maybe the district court issues a declaratory judgment, it's appealed to a circuit, you know, whatever. But that just seems like kind of something that happens every day in the district courts. So in the appropriate case, a district court can rule on the validity of a CMS ruling. So, I mean, there's a number of reasons that this district court couldn't and shouldn't going forward, you know, mootness, the 2017 CMS ruling has been rescinded. The plaintiff's claim wasn't properly decided under the 2017 CMS ruling because that ruling didn't apply to insulin pumps. The appeals counsel erred in applying the 2017 CMS ruling to plaintiff's claim. But in a case where a, you know, HHS applies a CMS ruling to a claim properly, and the secretary, you know, contests or, you know, continues to contest the claim before the district court, the district court can consider the validity of the CMS ruling. And if it's invalid, that would be a basis to reverse and remand. The question that the district court didn't get to, and I don't think this court needs to, is whether the district court can then issue an injunction saying, this CMS ruling also shouldn't be applied in future cases. Because that decides claims that haven't yet been presented to the agency. But in terms of deciding for purposes of a present live claim for Medicare coverage, whether a CMS ruling is properly issued, absolutely a district court can do that. That allows the court of appeals to rule on the issue, potentially the Supreme Court. We certainly don't take issue with that. In this case, however, not only is the issue moot, but for all the reasons we've explained, even if the issue were not moot, the decision of the district court should be affirmed. Okay, counsel. Thank you. We understand both of your arguments. Thank you very much for clarifying the situation for us. You're excused. Your case shall be submitted and the court will be in recess until 9 o'clock tomorrow morning, I believe.